LEONA M. BERNARD (FOSTER), Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; H. C. FOSTER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
(Foster) v. Commissioner
Docket Nos. 13509-82, 13523-82.
United States Tax Court
T.C. Memo 1984-637; 1984 Tax Ct. Memo LEXIS 38; 49 T.C.M. (CCH) 260; T.C.M. (RIA) 84637; December 6, 1984. Pete White, for the petitioners. Juandell D. Glass, for the respondent. WILES MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: In these consolidated cases respondent determined the following deficiencies in, and additions to, petitioners' Federal income taxes: [1]Additions to Tax Petitioners
Years
Deficiency
Sec. 6653(b)
Sec. 6654
Leona A. Bernard
1973
$3,523.71
$1,761.70
$112.48
(Foster)
1974
27,894.72
13,947.36
890.50
H. C. Foster
1972
7,309.27
3,654.64
233.33
1973
14,998.65
7,499.33
478.80
1974
5,479.58
2,739.79
174.81
The issues for decision are (1) whether petitioners [2] understated or failed to report taxable income and income tax liabilities during the years in question; (2) whether respondent has established by clear and convincing evidence that any underpayment of income tax was due to petitioners' fraud with intent to evade tax under section 6653(b) for the taxable years in question; (3) whether petitioners are liable for the section 6654 additions to tax; and (4) if we determine that petitioners are not liable *40 for the section 6653(b) additions to tax, whether they are liable for additions to tax under sections 6651(a) and 6653(a) for the taxable years in question. To facilitate our disposition of the issues herein, we will address the merits of each taxpayer's case separately. I. Petitioner H. C. Foster
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner H. C. Foster (hereinafter H. C.) was a resident of Norman, Oklahoma, when he timely filed his petition herein. [3]
Respondent filed his answer to the petition with this Court on August 6, 1982. Thereafter, respondent served H. C. with a request for admissions on April 4, 1983. *41 Neither H. C. nor his counsel responded to the request for admissions. Consequently, respondent's request for admissions, not having been responded to within 30 days of their submission to H. C., were deemed admitted for purposes of this case. Rule 90(c) and (e); [4], affirmed . [5]
*42 H. C. reported his income and deductions on a calendar year basis according to the cash basis method of accounting. He engaged in the bail bond business during the taxable years 1972, 1973, and 1974. [6] H. C. operated his bail bond business under various names and realized income during the years in issue from that business. He wrote bail bonds totaling $647,575, $719,840, and $1,814,745 during the years 1972, 1973, and 1974, respectively. The minimum commission on such bonds was usually 10 percent. H. C. received gross income from his bonding business of $37,995.65, $85,166,76, and $130,928.09 in 1972, 1973, and 1974, respectively. Farm income during that same period was $21,742.39 in 1972, $28,416.85 in 1973, and $4,092.70 in 1974. His total business expenses from all his businesses did not exceed $35,649.03, $89,754.48, and $115,055.76 during those same years. H. C. received minor additional business income from oil and gas rights and miscellaneous sources. H. C. maintained various bank accounts in 1972, 1973, and 1974. Into these accounts, *43 he deposited receipts from his bail bond and farming businesses, as well as oil and gas income, interest income, and proceeds of various real and personal property sales. In the Oklahoma bonding business, it was of practical convenience to maintain "build-up funds" (i.e., deposits) with the state insurance commission. H. C.'s deposits with the commission as of years ending 1971 through 1974 were $20,000, $25,000, $35,271, and $38,797.50, respectively. At year-end 1973 and 1974, H. C. also had build-up funds at other institutions of $3,055.95 and $622.33, respectively. H. C. failed to report business gross income during the years 1972, 1973, and 1974 in the amounts of $60,587.22, $114,280.91 and $139,147.18, respectively. In 1972, H. C. sold a parcel of land in which he had an adjusted basis of $171.05 for a total price of $3,900. In 1973, H. C. received a condemnation award in the amount of $35,500 on property in which he had an adjusted basis of $1,497. Also in 1973, H. C. received $3,500 from Sun Oil Co. for the granting of a right-of-way. H. C.'s allocated basis of that property was $688.37. H. C. made acquisitions of farm machinery and/or cattle of $10,575 *44 in 1972, $11,550 in 1973, and $10,062.83 in 1974. H. C. received additional income from a condemnation sale of farm buildings and improvements in 1971 and 1973. H. C. had submitted financial statements to third party financial institutions in October 1969 and January 1971 claiming income of $24,600 and $16,000, respectively. H. C. had taxable income of $21,176.65 in 1972, $36,920.58 in 1973, and $20,453.07 in 1974. H. C. did not file Federal income tax returns for 1972, 1973 or 1974. He was indicted by Federal grand jury for failing to file income tax returns for those years in violation of section 7201. H. C. entered a plea of nolo contendere to the 1973 charge, and the charges for the other years were dropped. H. C. had never filed income tax returns previous to those years. At all pertinent times H. C. failed to maintain adequate books and records. H. C. engaged in several affirmative acts intended to conceal his correct income tax liabilities. These included extensive currency-only transactions, use of aliases, and concealing asset acquisitions by placing assets in nominee names. Upon audit for the years in issue, H. C. made false statements to respondent's *45 agents regarding the amount and sources of his income. He also testified falsely at trial that because the State of Oklahoma had "taken" $60,000 to $70,000 from deposits he had with the state as a result of bond forfeitures, he was forced out of the bonding business. In reality, the state revoked his bail bond license due to a felony conviction for auto theft. He also falsely testified that he was not engaged in any other business besides bail bonding during the years in issue. However, he realized substantial income from the farming and sale of cattle during these years. OPINION A. Deficiencies
H. C. derived income during each of the years in issue from the various business activities and transactions set out in the findings of fact. He did not report such income as a result of his failure to file income tax returns for those years. Respondent's determinations of the deficiencies are presumptively correct and H. C. bears the burden of proving them erroneous. Rule 142(a); . H. C. presented no substantive evidence at trial. Also, it is clear that such income was taxable and that H. C. should have *46 reported it. Sec. 61(a). Accordingly, we sustain respondent's determinations, as modified, of the deficiencies in H. C.'s Federal income taxes for the years 1972, 1973, and 1974. B. Fraud
The principal issue is whether any part of an underpayment of tax for each of the years in issue was due to fraud with intent to evade tax within the meaning of section 6653(b). Whether fraud exists is a question of fact to be decided upon the entire record. , . Respondent bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); . To do so, respondent must establish that H. C. has an underpayment for each year in issue, and that H. C. intended to evade taxes believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. ; , affirming a Memorandum Opinion of this Court. *47 Respondent need not prove evil intent, but rather a voluntary or intentional violation of the known legal duty. See . Although respondent carries a heavy burden, it is clearly established that a taxpayer's intent to evade tax may be proved by facts deemed admitted pursuant to the Rules of the Court. ; , affirmed without published opinion ; . See , affirmed per curiam ; We think the facts deemed admitted clearly establish that H. C. fraudulently underpaid his taxes during the years in issue. First, it is well established that a consistent pattern of not reporting income over a period of years, while not in itself establishing fraud, is a strong indicium of fraud. ; *48 . Second, the record ownership of H. C.'s property did not reflect its actual ownership. The use of nominees or aliases and cash transfers was intended to conceal both the source and receipt of certain funds as well as the amount of income H. C. was to receive. The true income from the property sales was shielded in this manner. No sufficient motives, apart from tax evasion, were presented to explain the use of aliases. See , affirmed . See also ; . Third, in determining H. C.'s intent, we think it is significant that H. C. kept no books whatsoever, made false statements to IRS agents when questioned about his affairs, and (regarding the truthfulness of his testimony addressing these facts) had a previous conviction for tax evasion on a plea of nolo contendere for 1973. See ; , *49 affirmed ; , affirming ; , affirmed without published opinion . H. C. claims that the fraud addition should not be imposed because he did not believe that he was "making any money." He asserts that because he is an uneducated man he does not understand the concept of gross income. He concedes that his actions or inactions were negligent, but argues that in no way does this justify a finding of fraud. We disagree. H. C.'s testimony at trial was evasive and untruthful. He failed to rebut respondent's evidence, and his explanations were discredited on cross-examination. We found his testimony to be untrustworthy and accord it little weight. In view of the foregoing, we hold that H. C. is liable for the additions to tax under section 6653(b) for 1972, 1973, and 1974. Because we have sustained the section 6653(b) addition to tax for fraud, we need not decide whether H. C. is liable for the sections 6651(a) or 6653(a) additions *50 to tax. Sec. 6653(b) and (d). C. Section 6654 Additions to Tax
H. C. did not file Federal income tax returns in 1972, 1973, or 1974. Respondent therefore determined additions to tax for failure to pay estimated tax for each of those years, based upon the amount of tax required to be shown on the returns. See section 6654(b). The section 6654 addition to tax is mandatory, and it will be imposed unless H. C. can place himself within one of the exceptions of subsection 6654(b). . H. C. offered no evidence or argument sufficient to contest the addition. Therefore, respondent's determination is sustained. II. Petitioner Leona M. Bernard (Foster)
FINDINGS OF FACT Petitioner Leona M. Bernard (Foster) (hereinafter Leona) was unmarried during 1973 and 1974 and served as an agent for H. C.'s bonding business during those years. She was engaged in the bail bond business for her own account under the name of Associated Bonding Company during those years. As in H. C.'s case, neither Leona nor her counsel responded to respondent's request for admissions. The request for admissions was therefore *51 deemed admitted for the purpose of the pending action under Rule 90(c) and (e). Leona is a cash basis taxpayer. She did not file any Federal income tax returns in the name of Associated Bonding for either 1973 or 1974, nor did she timely file personal returns for those years. She had previously filed personal returns for the years 1970, 1971, and 1972. Leona did not maintain books or records of her bonding business for the 1973 or 1974 taxable years. Leona purchased a Ford Thunderbird automobile in 1974 by giving H. C. the funds to purchase it for her. She purchased a Ford Pinto for $3,635 in 1973. She made bank deposits to various accounts of $4,161.50 in 1973 and $10,253.60 in 1974, withholding currency of $866.55 in 1973 and $60 in 1974. When questioned by respondent's agents, she stated she had no bank accounts during this time. Leona refused to cooperate with respondent's investigating agents. Leona contacted a certified public accountant, Richard Talley, in March 1976, after being informed by respondent's agents that she was under investigation. Talley prepared returns for 1973 and 1974 which were filed with the Internal Revenue Service Center in Austin, *52 Texas on March 24, 1976. The returns showed losses from the bonding business of $71.58 in 1973 and $9,909.25 in 1974. Because no other source of income was declared, Leona claimed she had no taxable income for those years, and hence no tax liability. The returns were prepared solely from information furnished to Talley by Leona, who represented that the figures were correct. However, she did not furnish Talley with any formal or informal books or records. Although the returns indicate no source of income or revenue other than her bonding business, in July of 1973 Leona executed a loan application with a bank in Norman, Oklahoma, stating that she had "take home" wages as an employee of H. C. Foster of $425 per month. The bonds written by Leona in conducting her business were shown at "face value" on the reports filed with the Oklahoma State Insurance Commission. In 1973, Leona wrote bonds with a total face value of $165,330. The total face value of the bonds she wrote in 1974 was $1,027,560. The commissions charged on these bonds ranged from eight percent to 25 percent of face value, with an average of approximately 10 percent. The returns prepared by Talley showed her commission *53 income to be $1,610 for 1973 and $29,375 in 1974. Leona did not maintain a build-up or special account with the Oklahoma State Insurance Commission, nor did her name appear on H. C.'s special account with the commission. OPINION A. Deficiencies
Respondent contends that there was bonding income received in excess of what was reported by Leona in the amounts of $14,923 in 1973 and $73,381 in 1974. This was calculated by taking 10 percent of the gross face amount of Leona's bond totals for each of the years and subtracting business expenses. These figures were confirmed by reconstructing Leona's income through the use of the bank deposits method. Leona concedes that she received sums of money from writing bail bonds, but claims that she reported all of the amounts. She contends that there was a compensation arrangement between herself and others who were writing bonds under her name. She contends that those receipts, as well as commission revenue received on bonds written in her own right, did not result in income and, consequently, there are no deficiencies in 1973 and 1974. We disagree. Assuming arguendo the nebulous legality of allowing others to write *54 bail bonds in her name, Leona submitted no evidence to establish such an "arrangement" other then her own testimony and that of a bail bondsman who claimed to have written all of his bonds under Leona's name. The bondsman testified that he would give Leona 50 percent of the commission he would earn on the transactions in return for Leona's allowing him to use her name. On cross examination, however, the witness recanted his testimony when it was proved that almost all of these "arrangements" were with H. C., note Leona, and upon his being reminded of the penalties of perjury. We reject the bail bondsman's testimony as we do the testimony of Leona. Accordingly, because no other evidence was presented, we hold that Leona failed to carry her burden of proof with respect to the deficiencies determined by respondent. Rule 142(a); B. Fraud
We hold on this record that respondent has met his burden of proving fraud by clear and convincing evidence for the reasons set out below.To prove fraud, respondent must establish that Leona underreported her income with an intent to evade tax during the years in question. It is *55 clear that Leona underreported her income in 1973 and 1974. We reach this conclusion without regard to Leona's failure to carry her burden of proof as to the underlying deficiencies. We further think the requisite intent to evade tax was her reason for doing so. First, Leona failed to timely file any returns for 1973 and 1974, after filing for the three previous years. She offered no adequate explanation for stopping her previous practice of filing. The fact that she filed in previous years illustrates she was aware of her responsibility to file and that income received was taxable. She had worked as a bookkeeper and was familiar with keeping financial records. She earned substantial income which required her to file returns. See Second, Leona made no attempt to keep records of her income. Having worked as a bookkeeper, we think she was aware of her obligation to maintain adequate records for tax purposes. See ; ; . *56 Third, Leona refused to cooperate with respondent's agents and made false and inconsistent statements to them (such as those regarding the existence of her bank accounts). See ; ; . Fourth, Leona resumed filing her returns only after being contacted by respondent. We think she did not intend to file until respondent's agents had caught up with her. [7] Once that happened, she attempted to establish a case for not filing. The returns she did file for 1973 and 1974 were prepared from information provided to Talley which she represented as correct at the same time she had substantial amounts of unreported income. She also made claims to third parties of receiving income which did not appear on the returns, and she offered no evidence to determine which of these documents, the loan applications or her returns, were misrepresentations. *57 Finally, Leona's income, as discerned from the bank deposits she made, did not correspond to the net losses she reported for 1973 and 1974. We think she was aware that portions of the sums she was depositing represented income to her. On the record as a whole, we think that at least a portion of the deficiencies in each of the years was the result of Leona's intent to evade tax, and accordingly the section 6653(b) additions to tax for fraud are sustained. Because of our holding regarding Leona's additions to tax for fraud, we need not decide whether she is liable for the section 6651(a)(1) and section 6653(a) additions to tax. C. Section 6654 Addition to Tax
Respondent determined that Leona was liable for the section 6654 addition to tax for failure to pay estimated tax during 1973 and 1974. Leona offered no evidence or argument to contest this addition. Therefore, respondent's determination is sustained. To reflect the foregoing and concessions made by respondent at trial, Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references shall be to the Internal Revenue Code of 1954, as amended. ↩
2. Originally, this case was consolidated with the case of Hulett C. Foster v. Commissioner,↩ Docket No. 13511-82. At trial, however, Hulett C. Foster, H. C.'s son, was in prison. Accordingly, that case was separated and continued generally. Reference to "petitioners" shall be to both H. C. Foster and Leona M. Bernard (Foster).
3. The petition was filed June 16, 1982.↩
4. All rule references are to the Tax Court Rules of Practice and Procedure. ↩
5. At the calendar call and again at trial, petitioners' counsel moved to have the deemed admissions set aside or withdrawn and asked the Court's permission to then answer the request for admissions. Generally, under Rule 90(e), a fact which is deemed admitted is conclusively established. Rule 90(e) prescribes the circumstances under which this Court will permit withdrawal or modification of deemed admissions. See ; . See also . We denied petitioners' motion because petitioners had not provided any sufficient reasons for the withdrawal and respondent would have been prejudiced in prosecuting his case or defending on the merits. The findings of fact in both dockets are based upon the deemed admissions and testimony at trial, as well as the stipulated facts.↩
6. During the years in question, H. C. was also engaged in farming and cattle businesses from which he derived income.↩
7. Once she did not file, a reason for continuing to fail to file is to attempt to conceal past failures to report income.See ; .↩